DECISION AND JUDGMENT ENTRY
This matter is before the court on appeal from a judgment of the Lucas County Court of Common Pleas. That court sentenced appellant to serve nine years in prison for burglarizing the home of his estranged wife, in violation of R.C. 2911.11 (A)(1).
Appellant, Ronald Allen Jr., married Tina Allen in April 1992. They moved to a rented home on Maywood Street in Toledo, Ohio in March 1996. In November 1996, appellant moved out of the house because the parties had "a disagreement, a situation." Tina left the premises at approximately the same time to live in shelters and with relatives. The record does not clearly reflect whether appellant moved as a result of a court order.
Appellant claimed he continued to have a key to the residence and continued to use the premises and store belongings there until December 1996, when utility service was terminated. Appellant acknowledged that he also lived with a girlfriend during that time.
On January 7, 1997, Tina moved back into the home at Maywood. According to Tina, appellant's and Tina's preschool aged son woke her at approximately 1:30 p.m. on January 8, 1997, because appellant was at the door. Prosecution witnesses testified that appellant forcibly broke down the door and attacked Tina's boyfriend.
On January 22, 1997, appellant was indicted for aggravated burglary, a first degree felony. Tina initiated divorce proceedings at about the same time.
On February 7, 1997, appellant entered a plea of not guilty. The matter did not proceed to a trial to the bench until August 10, 1998.[1] In the meantime, the parties' divorce had become final in June 1997.
At the close of appellee's case, appellant moved for a judgment of acquittal under Crim.R. 29 (A). Appellant argued that because he was married to Tina, he could not trespass into his own residence. Because trespass is an element of aggravated burglary, appellant contended that he could not be convicted of aggravated burglary. In support, appellant argued that a domestic relations provision found in R.C. 3103.04 specifies that one spouse cannot exclude the other from his or her dwelling without a court order either granting that spouse exclusive possession of the marital premises or restraining the other spouse from entering the premises. The trial court denied the motion.
After recalling Tina to the stand, appellant testified in his own behalf. Appellant renewed his motion for acquittal. The trial court withheld decision until both sides submitted briefs in regard to appellant's motion for acquittal. See Crim.R. 29 (B).
On October 7, 1998, the trial court denied appellant's motion for acquittal. The court determined that the testimony of Tina and appellant provided "sufficient evidence in the record to allow reasonable minds to conclude that a temporary protection order was in effect" on the date of the incident. It further determined that there was sufficient evidence to reasonably conclude that appellant and Tina had decided to live in different places. Consequently, the trial court determined that there was sufficient evidence to conclude that appellant had trespassed at the Maywood residence on January 8, 1997, and therefore, sufficient evidence to allow a conclusion as to whether defendant committed aggravated burglary. After announcing its decision, the parties proceeded to closing argument that day. The trial court found appellant guilty of aggravated burglary. Denying appellant's request for a presentence investigation report, the trial court sentenced appellant to serve nine, of a possible ten maximum, year sentence.
Appellant now raises the following two assignments of error:
 "I. THERE WAS INSUFFICIENT EVIDENCE TO SUPPORT DEFENDANT'S CONVICTION OF AGGRAVATED BURGLARY.
 "II. THE TRIAL COURT'S CONVICTION OF DEFENDANT WAS AGGRAVATED BURGLARY WAS PLAIN ERROR"
We will address both assignments of error together because both argue that R.C. 3103.04 precludes a finding of trespass, and therefore, a conviction for aggravated burglary. Appellant asserts that appellee "did not present evidence that was legally sufficient to support all the elements" for a guilty verdict of burglary because (a) appellant still maintained a residence at Maywood, and (b) the state did not prove that court orders prohibited appellant from entering the premises. Appellant also contends that a burglary conviction based upon insufficient evidence constitutes "plain error."
R.C. 2911.11 defines aggravated burglary as:
 "(A) No person, by force, stealth, or deception, shall trespass in an occupied structure * * *, when another person other than an accomplice of the offender is present, with purpose to commit in the structure * * * any criminal offense, if any of the following apply:
 "(1) The offender inflicts, or attempts or threatens to inflict physical harm on another * * * "
However, appellant contended, at trial as he does on appeal, that a domestic relations statute, R.C. 3103.04, precludes prosecuting a spouse for trespassing onto the premises of his or her spouse. Because trespass is an element of burglary, appellant argued he could not be prosecuted for or convicted of burglarizing his estranged wife's home. R.C. 3103.04 provides:
 "Neither husband nor wife has any interest in the property of the other, except as mentioned in section 3103.03 of the Revised Code, the right to dower, and the right to remain in the mansion house after the death of either. Neither can be excluded from the other's dwelling, except upon a decree or other order of injunction made by a court of competent jurisdiction." (emphasis added).
Appellant relied upon State v. Lilly (May 29, 1998), Montgomery App. No. 16684, unreported, to support his argument. The appellate court in Lilly determined that, absent a court order barring a spouse from the premises of the other, the element of trespass could not be legally proven because appellant was married to the occupant of the premises. Compare State v. Rollins (May 27, 1988), Fulton App. No. F-88-1 (whether the state can prove trespass into estranged wife's home when separated by oral agreement is an issue to be determined at trial).
The Supreme Court of Ohio has recently reversed the appellate court decision in Lilly upon which appellant has premised his argument. The Supreme Court concluded that a "spouse may be criminally liable for trespass and/or burglary in the dwelling of the other spouse who is exercising custody or control over that dwelling." State v. Lilly (1999), 87 Ohio St.3d 87, at the syllabus. Thus, appellant's assertion that the domestic relations provision found in R.C. 3103.04 is incorporated into the criminal statutes to prohibit prosecuting a spouse for trespassing into or burglarizing the other spouse's residence has been rejected.
As a result of Lilly, neither R.C. 3103.04, nor the fact that appellant and Tina were married, standing alone, precluded a finding of trespass. Consequently, R.C. 3103.04 did not prevent the trial court from convicting appellant of aggravated burglary as a matter of law.
Following the Supreme Court's decision in Lilly, the key question is whether a spouse knowingly entered or remained on the land or premises in the control or custody of his or her spouse without privilege to do so. See R.C. 2911.21 (A). While marital status no longer bars a conviction for burglary, it may be relevant to show whether one spouse has control and custody of premises. Similarly, while the absence of a court order no longer dispositively prohibits a conviction for burglary into a spouse's home, a court order may be probative of which spouse has control and custody of premises.
The transcript reveals that there was sufficient evidence for the trial court to conclude that appellant had no right to custody or control of the Maywood residence on January 8, 1997. See Lilly, 87 Ohio St.3d at 102. While the testimony was conflicting as to whether appellant stored possessions in the home, there was insufficient evidence to establish that appellant used the premises for a residence after the utilities were shut-off in December. In fact, he acknowledged that he often stayed at the home of his girlfriend after the utilities were turned off. Particularly persuasive is the fact that Tina was able to regain possession on January 7, 1999 without appellant's assistance. The trial court pointed out that appellant used force, in the middle of the night, to enter the residence despite his claim he still had a key. Consequently, there was sufficient evidence to show that Tina, not appellant, had custody and control of the Maywood premises.
In light of Lilly, appellant's argument that appellee did not prove that a court order or decree was in effect on January 8, 1997 to bar appellant from Tina's premises has greatly decreased in significance. Nonetheless, whether such an order was in effect would be relevant to show whether Tina had custody and control of the premises. We agree with appellant that there was not sufficient evidence to establish that such a court order existed.
The only evidence produced about other court proceedings was appellant's and Tina's testimony. As laymen, their testimony as to whether the trial court in fact issued a protection order giving Tina custody and control of the premises was not persuasive. While appellant acknowledged he was ordered by a municipal court judge to attend classes and not touch Tina, he indicated he was allowed to be at the premises. Tina was able to testify she "filed some papers", and had gone to court, but she could not identify the nature of the court proceedings (e.g., civil or criminal) or exactly what kind of orders, if any, the court may have issued.
Appellee did not introduce self-authenticating copies of court orders into evidence to establish the existence or terms of any court orders arising from past incidents of alleged domestic violence which would require appellant to stay away from the Maywood premises. Evid.R. 902 (1); compare Evid.R. 609 (F).[2]
The testimony of Tina and appellant concerning domestic violence proceedings in Toledo Municipal Court revealed a lack of comprehension of the court proceedings; for example, whether they were civil or criminal in nature. Thus, we question whether they had enough personal knowledge to testify about those proceedings. Consequently, the trial court could not reasonably conclude that another court issued a "temporary protection order" effectively giving Tina control and custody of the house on Maywood. However, in light of the other evidence demonstrating Tina, not appellant, had control and custody of the premises on January 7, 1997, the existence of a protective order would be cumulative evidence. As a result, the trial court's determination that a temporary protection order was in effect on January 8, 1997 constituted harmless error.
Sufficient evidence supported the trial court's determination that appellant had trespassed into and burglarized his estranged wife's home. Because there was sufficient evidence to support that conclusion, there was no "plain error."
Accordingly, appellant's first and second assignments of error are found not well-taken.
The judgment of the Lucas County Court of Common Pleas is affirmed. Costs are assessed to appellant.
JUDGMENT AFFIRMED.
 _______________________________ Melvin L. Resnick, J.
 _______________________________ James R. Sherck, J.
 _______________________________ Mark L. Pietrykowski, J.
CONCUR.
[1] Apparently trial was delayed because another criminal matter was pending, the judge recused himself upon appellant's motion, and appellant changed attorney several times.
[2] The methods of proof which may be used to impeach a witness with evidence of conviction of a crime are defined as follows:
 "When evidence of a witness's conviction of a crime is admissible under this rule, the fact of the conviction may be proved only by the testimony of the witness or direct or cross-examination, or by public record shown to the witness during his or her examination. * * *"